UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN PALAZZOLO,

   Petitioner,

v.

SHERRY BURT,

   Respondent.
_____/

Case No. 08-14287

SENIOR UNITED STATES DISTRICT JUDGE
ARTHUR J. TARNOW

**OPINION AND ORDER CONDITIONALLY GRANTING
PETITIONER'S WRIT OF HABEAS CORPUS**

**I. Introduction**

 Petitioner John Palazzolo has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's state court convictions for criminal sexual conduct. Petitioner alleges ineffective assistance of trial counsel.[1] The Court held an evidentiary hearing on January 5, 2011. Petitioner and Respondent filed supplemental briefs after the evidentiary hearing. Dkt. [20], [21].

 Petitioner argues that trial counsel acted unreasonably in failing to interview and call witnesses who would have corroborated his testimony. Petitioner is correct. The habeas petition is conditionally granted based on trial counsel's ineffective assistance.

---

[1] Petitioner raised other claims in support of the Petition for Writ of Habeas Corpus. This Court has already addressed the other claims in its Order [13] by adopting the Report and Recommendation [10]. The only issue presently before the Court is the ineffective assistance of trial counsel claim.

1

**II. Background**

A. Factual Background

On February 14, 2006, Petitioner was convicted of two counts of third-degree criminal sexual conduct. The facts underlying his conviction were summarized in the brief submitted by the prosecutor in the Michigan Court of Appeals:

> In September, 2005, the victim, Crystal Schultz, was walking down a street in Melvindale when she encountered [Petitioner] and a man named Travis Read. (2/13, 12). [Petitioner] told the victim that her friend was at a party at his house. [Petitioner] took the victim to his house, 2303 Fisher Street in Melvindale, but her friend was not there. Instead, numerous men were there playing cards and using drugs. (2/13, 13). The victim stayed at the house because she felt as though she could not leave. (2/13, 18). After an hour, [Petitioner] told the victim that he needed her to have sex with certain men. In exchange for the sex, the men would give [Petitioner] money or drugs. (2/13, 16). The victim refused and asked to leave. (2/13, 18). [Petitioner] told victim that if she did not do what he asked to he would have her "ass beat or killed." (2/13, 19). [Petitioner] later gave the victim a glass of pop. After drinking the pop, the victim felt strange and fell asleep. (2/13, 29). In the kitchen, [Petitioner] told the victim to smoke crack cocaine and she complied. (2/13, 29). The victim was repeatedly given drugs which put her in a condition where she felt she could not leave. A few days later, Travis took the victim to [Petitioner's] bedroom and told her that [Petitioner] wanted her to have sex in exchange for drugs and money. (2/13, 24). The victim again indicated that she did not want to do what [Petitioner] wanted. Travis then pushed the victim on the bed and started kissing her. The victim was under the influence of narcotics at the time. (2/13, 27). Travis put his penis into the victim's vagina and had sex. Over the course of the next few days, the victim had sex with other men in exchange for the men giving drugs and money to [Petitioner]. (2/13, 31). Each time, the victim was under the influence of narcotics. [Petitioner] also ordered the victim to have sex with him. The victim told [Petitioner] no and tried to push him away but she was unable to stop [Petitioner]. (2/13, 111). [Petitioner] threatened to have someone hurt the victim if she did not comply. (2/13, 33, 43). The victim reported that [Petitioner] had oral sex with her twice and intercourse three times. (2/13, 32). After the victim had been in the house for ten days, a person named Tony confronted [Petitioner] and told him to allow the victim [to] leave or else he would call the police. (2/13, 35). [Petitioner] also accused the victim of having someone assault him. The victim later reported what happened to her to the police.
> On September 21, 2005, the police executed a search warrant at [Petitioner's] house. Throughout the house, the police found empty pill bottles, crack pipes, and other drug paraphernalia. (2/13, 196). The police also found

2

> Vicodin pills that were prescribed to a person other than [Petitioner]. (2/13, 197).
> On February, 13, 2006, a waiver trial commenced in the Third Circuit Court for Wayne County, the Honorable Thomas E. Jackson presiding. The criminal information charged [Petitioner] with three counts of First Degree Criminal Sexual Conduct. [Petitioner] presented witnesses that testified that the victim was voluntarily propositioning men on the street and at [Petitioner's] house. (2/14, 30, 44). [Petitioner] testified that he invited the victim to his house and allowed her to do business exchanging sex for drugs in his house. (2/14, 62). [Petitioner] denied ever threatening or assaulting the victim. Instead, the victim willingly had sex with him for free in gratitude for him allowing her to stay at the house. (2/14, 64). After the victim left the house, a man named Jimmie Whitman told [Petitioner] that the victim was conspiring to accuse [Petitioner] of raping her. (2/14, 68-69). Jimmie was a friend of Tony, the man that the victim was staying and confronted her about her plan to set him up. (2/14, 70). On February 14, 2006, Judge Jackson found [Petitioner] guilty of two counts of Third Degree Criminal Sexual Conduct. The court believed that [Petitioner] used force to accomplish the two admitted sexual penetrations. The court found no credibility to [Petitioner's] claim that the victim conspired with Tony to make false accusations against [Petitioner]. (2/14, 111).

Pl.-Appellee's Br. on App., in *People v. Palazzolo*, No. 269098 (Mich. Ct. App.), at 3-5. (internal footnote omitted).

### B. State Court Proceedings

On March 7, 2006, Petitioner was sentenced to two concurrent terms of six to fifteen years imprisonment. Petitioner appealed as of right to the Michigan Court of Appeals. Through counsel, Petitioner argued that he was 1) entitled to a new trial based on newly discovered evidence–testimony of James Waitman[2]; 2) entitled to a new trial because the verdict was against the great weight of the evidence; 3) entitled to a new trial before an impartial jurist; and 4) denied a fair trial due to the cumulative effect of the errors at trial. Petitioner also filed a *pro se*

---

[2]When the charges were brought against Petitioner he did not know Waitman's name. Tr. [18], at 35. Petitioner learned of Waitman's proper name while in jail. *Id.* Throughout some of the state court documents, Waitman is referred to as "Whitman."

motion for remand for a *Ginther*[3] hearing, while raising additional issues. *See* Dkt [9], Ex. 11, at 57, ¶ 6. The Michigan Court of Appeals denied Petitioner's *pro se* motion for a remand for a *Ginther* hearing. *See id.*, Ex. 11, at 9. The Court ultimately affirmed his conviction. *See People v. Palazzolo*, No. 269098, 2007 WL 2429222 (Mich. Ct. App. Aug. 28, 2007) (per curiam).

Petitioner, through counsel, appealed to the Michigan Supreme Court. Petitioner sought leave to appeal based on newly discovered evidence, impartial jurist, ineffective assistance of counsel, sufficiency of the evidence, and cumulative effect of errors. The Michigan Supreme Court denied Petitioner's application for leave to appeal "because [it] was not persuaded that the questions presented should be reviewed by [the] Court." *People v. Palazzolo*, 743 N.W.2d 31, 31 (Mich. 2008).

### C. Federal Court Proceedings

Through counsel, Petitioner filed an application for a writ of habeas corpus in this Court on October 8, 2008. Petitioner raised the issues of insufficiency of the evidence, violation of his right to a fair trial from an impartial jurist, ineffective assistance of trial and appellate counsel, and cumulative effect of the errors at trial. The Magistrate Judge issued a Report & Recommendation [10]. The recommendation was to deny all the claims except for the ineffective assistance of counsel claim. It also recommended that the Court hold an evidentiary hearing to develop facts relating to his ineffective assistance claim. This Court adopted the Magistrate Judge's Report and Recommendation as its own and granted an evidentiary hearing on the issue of ineffective assistance of counsel claim. *See* Dkt. [13].

---

[3]In Michigan state courts, a *Ginther* hearing is an evidentiary hearing regarding claims of ineffective assistance of counsel. *See People v. Ginther*, 212 N.W.2d 922, 924 (Mich. 1973).

The evidentiary hearing was held on January 5, 2011. Testimony was provided by: 1) Edward J. Holmberg, Petitioner's trial counsel; 2) John G. Palazzolo, Petitioner; 3) Norman Sieloff, private investigator; 4) James Albert Waitman, potential witness; 5) Ronald Harris, potential witness; and 6) Karen Paulas[4], potential witness. *See* Tr. [18]. The Court makes the following factual findings based on the evidentiary hearing.

Attorney Holmberg represented Petitioner during trial. Tr. [18], at 8. Petitioner provided trial counsel with a list of potential witnesses. *Id.* at 9-10. On the list were the names James Waitman and Ronald Harris. *Id.* at 14, 16. Trial counsel did not interview Harris. *Id.* at 14. He did, however, issue a subpoena for him. *Id.* Trial counsel claims that Wayne Boswell served Harris with the subpoena. *Id.* at 15. Boswell was not a process server, nor was he trained; he was a friend of the Petitioner. *Id.* at 15. Boswell allegedly served Harris on the corner of "Peters and Liddesdale in Detroit." *Id.* at 15; Ex. 2. The Acknowledgment of Service is blank on the form. *Id.* at 26; Ex. 2. Harris did not appear at trial. *Id.* at 19. Trial counsel could not remember if he paid Boswell for his services. *Id.* at 15.

Trial counsel used a process server named Eric Szor to try to locate James Waitman. Tr. [18], at 16. After a few failed attempts, trial counsel was unable to locate Waitman. *Id.* at 16-17. Trial counsel knew Waitman's mother was living locally but never tried to contact her to locate the potential witness. *Id.* at 17. Trial counsel never used a licensed investigator to try to find him. *Id.* Waitman did not testify at trial. *Id.* at 19.

---

[4]Karen Paulas would have been a favorable witness for Petitioner. Her testimony was very similar to that of Harris. *See id.* at 72-82. Petitioner did not raise failure to investigate or call Paulas in the state court, therefore this Court did not consider claims related to her or her testimony for the purposes of this opinion.

Trial counsel admitted that Petitioner told him how important all of the witnesses were. *Id.* at 18.  The defense at trial was that the sexual acts were consensual and that Schultz was not held captive. *Id.* at 20.  Trial counsel stated that his "theory with the trial was [to] keep it simple." *Id.* at 24.  Trial counsel knew that Petitioner referred to the whole situation as a "set up" but did not present that defense because he was concerned with confusing the fact-finder, which in this case was a judge. *See id.* at 24, 30-33.

Trial counsel testified that when Harris did not show up at trial, he talked with Defendant about requesting a continuance to ensure his presence but that he ultimately decided against it, as Harris was not needed. *Id.* at 27.  Trial counsel could not remember why he was not needed though. *Id.* at 27.  Petitioner denies that trial counsel ever discussed the possibility of a continuance or an order for Harris to appear. *Id.* at 41-42.  Petitioner also stated that he never told trial counsel that Harris would possibly be damaging as a witness. *Id.* at 42.

Petitioner's defense is and was that the sex with Schultz was consensual and that her accusations were part of a set up. *Id.* at 37.  Petitioner testified that he stressed the importance to trial counsel of locating Waitman and using him as a witness. Tr. [18], at 35-36.  Petitioner gave trial counsel the information he had about locating the witnesses. *Id.* at 35-37.  He told trial counsel that Harris could be located through Karen Paulas and that Waitman had moved to Arizona. *Id.*

Petitioner called Norman Sieloff, a Michigan licensed private investigator, to testify at the evidentiary hearing. Tr. [18], at 44.  Sieloff explained that while it was more difficult than normal to locate Waitman, he was able to do so within a month or less. *Id.* at 46-47.  He used various levels of investigative methods to locate Waitman. *Id.* 44-16.  Sieloff was able to find

Waitman's mother who put him in touch with Waitman. *Id.* at 47. Waitman contacted Sieloff and said he would testify in Petitioner's favor. *Id.* Sieloff was also able to locate Harris in less than a month. Tr. [18], at 47-48.

Petitioner also called the witnesses that trial counsel failed to secure for trial, Waitman and Harris, to testify at the evidentiary hearing. Waitman testified that he in fact did move to Arizona and that he had no idea that Petitioner was being charged with criminal sexual conduct. *Id.* at 53. The first Waitman heard of Petitioner's conviction was in 2006, when he was contacted by Petitioner's appellate counsel. *Id.* at 53-54. Waitman provided an affidavit stating that he knew the parties involved in the case, had first hand information that Petitioner was set up by Schultz and Tony Delfanso. Ex. A; Tr. [18], at 56-57. The affidavit also stated that he had personal knowledge that Schultz engaged in prostitution. *Id.*

Harris testified that he observed Schultz at Petitioner's house about thirty to forty times. Tr. [18], at 62. Harris testified that he frequently visited Petitioner's home at the time that Schultz was there. *Id.* at 62-63. He stated that he saw Schultz come and go from the home as she pleased. *Id.* at 63. He did not observe anything that made it seem like she was restrained or restricted. *Id.* Harris testified that he knew Petitioner was charged with criminal sexual conduct and that he was never contacted by trial counsel. *Id.*, at 61-62. He was never served with a subpoena. *Id.* at 63. He never resided on Liddesdale in Detroit. *Id.* Harris stated that if he would have been subpoenaed, he would have testified on Petitioner's behalf. *Id.* at 64.

The Court finds Petitioner, Waitman, and Harris to have provided credible and truthful testimony at the evidentiary hearing.

**III. Standard of Review**

Section 2254(d) of Title 28, United States Code, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2006). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1). "This deferential standard of review . . . applies only to a claim that has been 'adjudicated on the merits.'" *Brown v. Smith*, 551 F.3d 424, 428 (6th Cir. 2008); *see also Cullen v. Pinholster*, --- S. Ct. ---, 2001 WL 1225705, at *8 (U.S.). New evidence may be admitted in federal district court if the petitioner is not at fault for failing to develop the evidence in state court. *Brown*, 551 F.3d at 429; *see Holland v. Jackson*, 543 U.S. 649, 652-53 (2004). "Provisions like §§ 2254(d)(1) and (e)(2) ensure that '[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.'" *Cullen*, 2001 WL 1225705, at *11 (internal citations omitted).

Here, Petitioner requested a *Ginther* hearing; the Michigan Court of Appeals, however, denied his request. The Michigan Court of Appeals provided no reason for denying Petitioner's request. Petitioner was not at fault for failing to develop a factual record in state court. *See* Dkt

8

[9], Ex. 11, at 9. Therefore, this Court is not bound by AEDPA's deferential standard.[5] *See Brown*, 551 F.3d at 428; *see Williams v. Taylor*, 529 U.S. 420, 436-37 (2000). Nevertheless, this Court concludes that the Michigan courts' rejection of Petitioner's ineffective assistance claim "involved an unreasonable application of [ ] clearly established Federal law, as determined by the Supreme Court." § 2254(d)(1).

### IV. Discussion

In order to prevail on an ineffective assistance of counsel claim, a defendant must meet the two-part standard required by *Strickland v. Washington*, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687. As to the performance prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Further, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment" or "sound trial strategy." *Id.* at 689. As to the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. More

---

[5]*Williams* remains applicable following the Supreme Court's recent decision in *Cullen v. Pinholster*. *Cullen*, 2001 WL 1225705, at *9-10 (concluding that the "*Williams* did not concern whether evidence introduced in [a federal evidentiary hearing] could be considered under § 2254(d)(1)" when the claim had not been adjudicated on the merits in state-court proceedings).

9

than speculative assertions are required.  *Bowen v. Foltz*, 763 F.2d 191 (6th Cir. 1985).

### A.  Trial Counsel's Representation Fell Below an Objective Standard of Reasonableness

The state courts unreasonably rejected Petitioner's argument that his trial counsel should have investigated the witnesses on the witness list that they developed together, specifically with respect to Waitman and Harris.  Trial counsel is expected to thoroughly investigate "law and facts relevant to plausible options" for the defense.  *Strickland*, 466 U.S. at 690.  Though trial counsel is not required to pursue any conceivable defense, any decision not to pursue a defense must be supported by a "reasonable professional judgment[ ]."  *Id.* at 691.  Trial counsel's failure to contact and interview Waitman and Harris was unreasonable.  If he would have done so, he would have been able to make a professional judgment as to whether they should have been called as witnesses.  *See Couch v. Booker*, 632 F.3d 241, 246 (6th Cir. 2011) ("To make a reasoned judgment about whether evidence is worth presenting, one must know what it says.")

Petitioner maintains that the sex with Schultz was consensual.  His sole defense is that the motive behind Schultz's rape accusation was a "set up" to make money.  Pet'r's Supp. Br. [21], at 2.  Petitioner argues that Schultz knew his family had money and that she used the rape accusation as a way to demand money from the family in exchange to drop the charges against him.  *Id.*  Petitioner stressed the importance of witnesses Waitman and Harris.

Harris would have been a favorable witness for Petitioner.  Trial counsel was aware that Harris would have been able to support Petitioner's consent defense, yet trial counsel did not even contact or interview him prior to the trial.  Holmberg claims that Harris was served with a

subpoena. All signs, however, lead the Court to conclude that he was not. The subpoena was allegedly served by a friend of Petitioner who was not a process server and had no training. The place of service was a random street corner in Detroit. Trial counsel did not provide any information about why this corner was selected. Trial counsel could not remember if the friend, Boswell, was paid to serve the subpoena. There is no signature as an acknowledgment for service either. The Court finds that Harris' testimony that he was never contacted or served was credible.

With respect to Harris, trial counsel claimed that he talked to Petitioner about a possible continuance when Harris did not appear at trial. He claims that there was a reason why he decided that Harris was not needed. Trial counsel cannot remember what the reason was though. Petitioner testified that there was no conversation about a continuance. The Court finds Petitioner's testimony credible and that there was not a conversation about a continuance.

Waitman would have also been a favorable witness for Petitioner. Waitman would have been able to testify as a disinterested witness. He would have provided first-hand information relating to the set up, supporting Petitioner's testimony. Trial counsel did not contact Waitman at all. Trial counsel did not even attempt to contact Waitman's mother, who was living locally. The trial judge, Judge Jackson, stressed that he was convinced that Schultz was not "sophisticated enough" to plan and follow through with the set up. Dkt. [9-8], Trial Tr., at 111-12. Waitman's testimony would have corroborated Petitioner's defense and contradicted Schultz's testimony. Waitman could have discussed Mr. Delfanso's role in helping Schultz come up with the alleged set up, therefore rendering Schultz's lack of sophistication less

relevant.

Instead of using a licensed investigator to locate Waitman, trial counsel used a process server who was unlicensed and unsuccessful. The failure to locate Waitman is evidence of inadequate methods of investigation used by trial counsel. While the private investigator, Sieloff, did say that it was not easy to locate Waitman, he was able to do so within a month or less. The fact that Sieloff was able to contact Waitman and Harris within a month or less speaks to trial counsel's failure to investigate. *See Hodgson v. Warren*, No. 2:06-CV-11311, 2009 WL 703198, at *9 (E.D. Mich. Mar. 16, 2009), *aff'd*, 622 F.3d 591 (6th Cir. 2010) (finding that an investigator's ability to locate a witness within a month shows trial counsel's lack of investigative effort). At a minimum, trial counsel should have contacted the witnesses to interview them. There is no trial strategy that would involve a failure to contact and interview potential witnesses that could support Petitioner's defense. *See Couch*, 632 F.3d at 246 ("How can one exercise reasonable professional judgment about whether to stop a causation-based investigation before reading the key report that might support it?"). This is especially true as to Waitman; he would have provided the only first-hand testimony to support the set up theory.

Trial counsel testified that his strategy was to "keep it simple." The Court finds this so-called strategy to be unreasonable. Trial counsel testified that presenting a set up defense could be confusing for the fact-finder. This case, however, was a bench trial. It is hardly believable that Judge Jackson would have been confused by the set up defense. The facts of this case are not the type which lead to confusion. In fact, Petitioner testified to the set up theory when he took the stand. Trial counsel's failure to secure testimony, like that which Waitman would have provided, left Judge Jackson with only "he said, she said" testimony.

Without even contacting Waitman and Harris, let alone evaluating or weighing the risks and benefits of calling them to ask them what they would say if called, trial counsel was ill-equipped to assess the value of their testimony. *Id.* (citing *Towns v. Smith*, 395 F.3d 251, 260 (6th Cir. 2005)). Trial counsel could not have made a professional and reasoned judgment about whether a witness should be called to testify or whether a defense is worth pursuing without determining what the witnesses had to offer. *See Couch*, 632 F.3d at 246; *see also Towns*, 395 F.3d at 260. Contrary to the Michigan Court of Appeals' suggestion, this Court does not see how trial counsel's failure to investigate can be defended as a strategic decision. *See Hodgson v. Warren*, 622 F.3d 591, 600 (6th Cir. 2010). It was an unreasonable conclusion.

### B. Trial Counsel's Ineffective Representation Prejudiced Petitioner

Considering that the trial was based entirely on conflicting evidence, the testimony of each and every witness in this case was crucial. Judge Jackson's final decision was based on the credibility determinations he made.

Harris' testimony would have spoken directly to the issue of consent. Waitman's testimony would have supported the consent defense as well as the set up theory. Their testimony would have contradicted Schultz's testimony that Judge Jackson found to be credible. Waitman's testimony, as a disinterested witness, could have been deemed more credible than Schultz's. It could have bolstered Petitioner's credibility as well. There is a reasonable probability that Judge Jackson's opinion would have been changed had he heard testimony from Harris and Waitman. *Strickland*, 466 U.S. at 694. Trial counsel's failure to investigate witnesses that could have provided eyewitness testimony resulted in prejudice.

### V. Conclusion

For the reasons discussed above, and the Court being fully advised in the premises,

**IT IS ORDERED** that the petition for writ of habeas corpus is **CONDITIONALLY GRANTED**. The State must retry Petitioner or release him from custody within 100 days of the date of this order. If the State fails to take such action, this Court shall consider the issuance of an additional writ unconditionally releasing Petitioner from state custody. Should the State appeal this decision to the United States Court of Appeals for the Sixth Circuit, this order is stayed pending the disposition of that appeal.

**SO ORDERED.**

S/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated: April 21, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 21, 2011, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Secretary